IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

QUENTIN BOOKER, *et al.*

CRIMINAL CASE NO.
1:11-cr-00255-TWT-RGV

## ORDER FOR SERVICE OF MAGISTRATE JUDGE'S ORDER, REPORT, AND RECOMMENDATION

Attached is the Order, Report, and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Criminal Rule 59(2)(a)-(b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. Failure to object to this Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(D) and (H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED**, this 6th day of September, 2012.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

QUENTIN BOOKER, *et al.*

CRIMINAL CASE NO.

1:11-cr-00255-TWT-RGV

## MAGISTRATE JUDGE'S ORDER, REPORT, AND RECOMMENDATION

Defendants Quentin Booker ("Booker"), Stacey Dooley ("Dooley"), Ashley Henderson ("Henderson"), Ronny Little ("Little"), and Derrick Powell ("Powell") (collectively referred to as "defendants") are charged along with four other co-defendants in a fifteen-count indictment. Defendants are charged with (1) unlawfully obstructing, delaying, and interfering with interstate commerce by taking personal property in the custody and control of armored car couriers by means of actual and threatened force, violence, and fear of injury, and conspiring to do so, in violation of 18 U.S.C. §§ 1951 and 2; (2) carrying and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and (3) causing

the death of a person through using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 2.[1] See [Doc. 312].[2]

Now pending before the Court is a motion to suppress evidence obtained using cell site location information. [Doc. 207 (hereinafter referred to as "Booker's motion")].[3] Henderson has also filed a motion to suppress evidence obtained using cell site location information and to suppress evidence obtained from the search of 5015 Michael Jay Street, Snellville, Georgia, [Doc. 210], and Powell has filed a motion to suppress evidence of geographical and cell phone site location information, [Doc. 388].[4] The government has responded to these motions. See [Docs. 285, 408, 433]. For the following reasons, it is hereby **RECOMMENDED** that Booker's motion to

---

[1] Powell is not charged with this offense, which is Count Thirteen of the Second Superseding Indictment. See [Doc. 312 at 10].

[2] The listed document and page numbers in citations to the record in this Report, Recommendation, and Order refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[3] This motion was initially filed by Booker, who subsequently withdrew the motion. See [Doc. 417]. However, defendants Dooley, [Doc. 213], Little, [Doc. 214], and Henderson, [Doc. 218], had filed motions to adopt Booker's motion to suppress. These motions to adopt are **GRANTED**, and the Court will evaluate the merits of Booker's motion to suppress evidence obtained using cell site location information as adopted by these defendants.

[4] Powell perfected his motion to suppress by filing a motion to adopt Booker's motion to suppress evidence obtained using cell site location information. [Doc. 395]. This motion is **GRANTED** as unopposed, and the Court will consider the arguments raised in Booker's motion as they apply to Powell.

suppress evidence obtained using cell site location information, [Doc. 207],

Henderson's motion to suppress evidence, [Doc. 210], and Powell's motion to

suppress evidence, [Doc. 388], be **DENIED**.[5]

---

[5] Both Booker's motion and Powell's motion to suppress contain requests for an evidentiary hearing. See [Doc. 207 at 1; Doc. 388 at 2]. The Court has broad discretion in its determination of whether an evidentiary hearing is required. United States v. Cantu, 625 F. Supp. 656, 665 n.16 (N.D. Fla. 1985) (citation omitted). An evidentiary hearing is only required where "the allegations of the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient *and factual issues are raised*, a hearing is required." Id. at 664 (N.D. Fla. 1985) (emphasis omitted) (quoting United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972) (citation omitted)). Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Booker's motion challenges the sufficiency of the court order by making the blanket assertion that "the subpoenas and/or requests for cell site information in this case did not have any judicial oversight that made a finding supported by probable cause or specific and articulable facts for each telephone to show that there were reasonable grounds to believe the particular telephones may be relevant or material to the investigation." See [Doc. 207 at 13]. Similarly, Powell merely asserts that "[t]he gathering of [his] geographical and cell phone site location information was illegal and without probable cause." [Doc. 388 at 1]. These conclusory assertions raise no specific, detailed, nonconjectural, factual challenges to the sufficiency of the court order granting the government access to cell site location information, see Cantu, 625 F. Supp. at 664 (citation omitted), and the arguments contained in Booker's motion, subsequently adopted by Powell, instead challenge the validity of the process for obtaining such information as a matter of law and objectively reasonable expectations of privacy, which may be determined by the Court without further factual development. Accordingly, the requests for an evidentiary hearing are **DENIED**.

# I. STATEMENT OF FACTS

## A.    Cell Site Location Information

On February 8, 2011, the government filed an application and obtained an order for records pursuant to 18 U.S.C. § 2703(d).  [Doc. 285, Ex. 1 (hereinafter referred to as "Henderson Order")].  Specifically, the order authorized the government to install a "pen register, trap and trace, and enhanced caller identification device" and obtain "subscriber information[] and . . . cell site information"[6] for two telephone numbers, one of which was subsequently associated with defendant Henderson.  [Id. at 17-18].  The order authorized the government to obtain historical cellular site location dating back to September 1, 2010, and prospective cellular site location information on an ongoing basis for 60 days.  [Id. at 20-21].  The court order did not authorize the government to obtain any cell site information that might be available when the phones were turned on but a call was

_____

[6] The order specifies that "cellular site information" includes "(1) the cell site to which the Target Telephone sends its signal when a call is placed or received; (2) the cell site through which the call is routed when the call ends; and (3) the cell site during the call, if available."  [Henderson Order at 18].  "Cell site" is defined in this order as "the site of the antenna tower to which the cell phone is sending its signal." [Id. at 18 n.1].  The order then clarifies that "[c]ell sites are often divided into thirds, or 120-degree sectors.  Cellular telephone companies typically capture and record the sector in which the antenna tower receives a signal from a cell phone at the beginning and end of a call, as well as the tower itself.  Consequently, the definition of a cell cite in this Application includes the combined antenna tower and sector information, if maintained by the cellular telephone company."  [Id.].

not in progress, GPS information, or triangulation information related to the telephones.[7] [Id. at 18].

Similarly, on February 11, 2011, and March 16, 2011, the government filed applications and obtained court orders for records pursuant to 18 U.S.C. § 2703(d). [Doc. 285, Exs. 2-3 (hereinafter collectively referred to as "Booker Orders")]. Specifically, these orders authorized the government to install a "pen register, trap and trace, and enhanced caller identification device" and obtain "subscriber information[] and . . . cell site information"[8] for three telephone numbers, at least two of which allegedly were associated with defendant Booker. [Doc. 285, Ex. 2 at 16-17; Doc. 285, Ex. 3 at 18-19]. The orders authorized the government to obtain historical cellular site location dating back to September 1, 2010, and February 24, 2010, respectively, and prospective cellular site location information on an ongoing basis for 60 days from the date of the respective orders. [Doc. 285, Ex. 2 at 22; Doc. 285, Ex. 3 at 24]. The court orders did not authorize the government to obtain any cell site

---

[7] Specifically, the order states "[t]he Government is not authorized to obtain and shall not obtain from the provider pursuant to this Order: (1) any cell site information that might be available when the user's cell phone was turned on but a call was not in progress; (2) information from multiple cellular towers simultaneously that allows precise triangulation of the location of [the] cell phone; and (3) GPS information on the location of the user, even if that technology is built into the user's cell phone." [Henderson Order at 18].

[8] These orders define cell site information in the same manner as provided in the Henderson Order. See [Doc. 285, Ex. 2 at 17 & n.1; Doc. 285, Ex. 3 at 19 & n.1].

information that might be available when the phone was turned on but a call was not in progress, GPS information, or triangulation information related to the telephones.[9] [Doc. 285, Ex. 2 at 17; Doc. 285, Ex. 3 at 19].

Subsequently, on March 21, 2011, and March 23, 2011, the government filed applications and obtained court orders for records pursuant to 18 U.S.C. § 2703(d). [Doc. 433, Exs. 1-3 (hereinafter collectively referred to as "Dooley Orders")]. Specifically, these court orders authorized the government to install a "pen register, trap and trace, and enhanced caller identification device" and obtain "subscriber information[] and . . . cell site information"[10] for three telephone numbers allegedly associated with defendant Dooley. [Doc. 433, Ex. 1 at 15; Doc. 433, Ex. 2 at 16; Doc. 433 Ex. 3 at 17]. The orders authorized the government to obtain historical cellular site location dating back to September 1, 2010, and prospective cellular site location information on an ongoing basis for 60 days from the date of the respective order. [Doc. 433, Ex. 1 at 18; Doc. 433, Ex. 2 at 19 ; Doc. 433, Ex. 3 at 20]. Contrary to

---

[9] The specific language in these orders limiting the information the government was permitted to obtain was the same as the language in the Henderson Order. See [Doc. 285, Ex. 2 at 17; Doc. 285, Ex. 3 at 19].

[10] These orders define cell site information in the same manner as provided in the Henderson Order and the Booker Orders. [Doc. 433, Ex. 1 at 16 & n.1; Doc. 433, Ex. 2 at 17 & n.1; Doc. 433, Ex. 3 at 18 & n.1].

Dooley's assertions,[11] see [Doc. 398 at 12], the orders did not authorize the government to obtain any cell site information that might be available when the phone was turned on but a call was not in progress, GPS information, or triangulation information related to the telephones.[12] [Doc. 433, Ex. 1 at 16; Doc. 433, Ex. 2 at 17; Doc. 433, Ex. 3 at 18].

On March 23, 2011, the government obtained additional records related to a telephone number associated with defendant Henderson through two separate motions, pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d). [Doc. 285, Exs. 4 & 5 (hereinafter referred to collectively as "Henderson Disclosure Orders")]. Through the court orders related to these motions, the government obtained access to

_____

[11] On March 21, 2012, Dooley filed a motion to suppress evidence derived from illegally installed GPS trackers and from all real time location data derived from his telephones. [Doc. 398]. To the extent this motion reiterates the arguments related to cell site location information made in Booker's original motion and adopted by Dooley, compare [Doc. 398], with [Doc. 207], the admission of cell site location information pursuant to the trap and trace/pen register orders is resolved by this Report and Recommendation. Because the trap and trace/pen register orders described here do not, by their own terms, include real time GPS location data from Dooley's cell phones, see [Doc. 433 at 3-5], Dooley's arguments related to the GPS tracker and real time cell phone location data as authorized by the wiretap orders issued pursuant to Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, will be addressed in a separate Report and Recommendation.

[12] The specific language in these orders limiting the information the government was permitted to obtain was the same as the language in the Henderson Order and the Booker Orders. See [Doc. 433, Ex. 1 at 16; Doc. 433, Ex. 2 at 17; Doc. 433, Ex. 3 at 18].

incoming and outgoing telephone records for the phone number associated with Henderson dating back to December 7, 2010, and January 21, 2011, respectively. [Id. at 3]. The orders also authorized the government to obtain "subscriber information for any toll records obtained . . . and the date, time, cell site/sector and duration of such incoming and outgoing calls" for that phone number. [Id.]. These court orders did not authorize the government to obtain any prospective cell site location information, GPS, or triangulation information related to the phone number. See generally [id.].

On August 5, 2011, the government filed applications and obtained court orders for records pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d). [Doc. 408, Ex. 2 (hereinafter referred to as "Powell Application")]; see also [id., Ex. 3 (hereinafter referred to as "Powell Order")]. Through the court orders related to this motion, the government obtained access to incoming and outgoing telephone records for, among others, "a cellular telephone unassigned telephone number (404) 573-1803, service provided by Metro PCS, user unknown" for the time period from January 1, 2010, to March 31, 2010.[13] [Powell Order at 1-2]. The order also authorized the government

_____

[13] In support of its request, the government outlined the information it had about a string of armored car robberies and the individuals involved, and asserted that the identified telephone number was "likely used by [another] co-conspirator[] during and/or around the time of the investigated crimes as evidenced by their contact with one or more of the telephone numbers utilized by the other suspects." [Powell Application at 2-5]. In issuing the order, the undersigned Magistrate Judge

to obtain the "subscriber information for any toll records obtained . . . and the date, time, cell site/sector and duration of such incoming and outgoing calls." [Id. at 2]. The order did not authorize the government to obtain any prospective cell site location information. See generally [id.].

**B.      Search of the 5015 Michael Jay Street**

On March 30, 2011, law enforcement officers conducted a search of a residence located at 5015 Michael Jay Street, Snellville, Georgia (the "Jay Street residence"), pursuant to a warrant signed by a Gwinnett County Superior Court Judge. See [Doc. 210, Ex. A]. The affidavit used to secure the warrant relied in part on information obtained through the use of the Henderson Order and the Henderson Disclosure Orders. See [id.].

## II. DISCUSSION

**A.      Cell Site Location Information**

Through Booker's motion to suppress evidence, defendants seek to suppress all evidence obtained from cell site location information on the grounds that such information was illegally obtained. [Doc. 207]. Specifically, defendants maintain that

found "based on specific and articulable facts, that there was reasonable grounds to believe that the requested records [were] relevant and material to an ongoing criminal investigation." [Powell Order at 2].

9

the seizure of cell site location information through a subpoena[14] violates the Fourth Amendment to the United States Constitution and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 et seq. [Doc. 207]. They assert that there is "a [reasonable] expectation of privacy in cell site location information, i.e., information that reveals the physical location of where one has been and goes." [Id. at 3-4 (citing In re U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't (Lenihan Pa. Opinion), 534 F. Supp. 2d 585, 587, 610-12 (W.D. Pa. 2008), vacated by In re U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't (Sloviter Third Cir. Opinion), 620 F.3d 304, 51 (3d Cir. 2010))]. Accordingly, defendants contend, the Fourth Amendment requires a showing of probable cause prior to law enforcement using or obtaining such information. [Id. at 7 (citing In re Application of U.S. for & Order: (1) Authorizing Use of a Pen Register & Trap & Trace Device; (2) Authorizing Release of Subscriber & Other Info.; & (3) Authorizing Disclosure of Location-Based Servs. (Austin Tex. Opinion), 727 F. Supp. 2d 571 (W.D. Tex. 2010))]. Defendants further assert that a cell phone is a tracking device, and that communications from tracking devices cannot

---

[14] Both Booker's motion and Henderson's motion refer to the "subpoenas" authorizing interception of cell site location information. See, e.g., [Doc. 207 at 2 & n.1, 10, 12; Doc. 210 at 2-3, 10-11]. However, the government obtained the cell site location information via court order, pursuant to 18 U.S.C. 2703(d). See [Henderson Order; Booker Orders; Dooley Orders; Henderson Disclosure Orders; Powell Order].

be obtained using the court order procedure under the SCA.  [Id. at 11-12 (citing 18

U.S.C. § 2510(12); In re Application of U.S. for an Order Authorizing the Use of a Pen

Register with Caller Identification Device Cell Site Location Auth. on a Cellular Tel.

(McMahon N.Y. Opinion), 2009 WL 159187, at *3 (S.D.N.Y. Jan. 13, 2009) (holding

that a cell phone is a tracking device under the SCA); In re Application of the U.S. for

an Order (1) Authorizing the Use of a Pen Register & a Trap & Trace Device & (2)

Authorizing Release of Subscriber Info. and/or Cell Site Info. (Orenstein N.Y.

Opinion), 396 F. Supp. 2d 294 (E.D.N.Y. 2005))].[15]  In response, the government

---

[15] The portion of Henderson's motion asserting that evidence obtained using the cell site location information should be suppressed is essentially identical to Booker's motion.  Compare [Doc. 210 at 3-9], with [Doc. 207].  Accordingly, the Court will refer only to Booker's motion when referencing the above arguments in favor of suppression.  Although Henderson presents additional arguments in support of his position that only a warrant can be used to obtain historical cell site location information under the SCA, see [Doc. 210 at 9-10], his additional arguments are inapplicable to the present situation.  First, he cites an Eleventh Circuit case noting that the *contents* of electronic communication held less than 180 days may be disclosed only pursuant to a federal warrant, see [id. at 10 (citing Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186 (11th Cir. 1997))]; see also [Doc. 207 at 5 (arguing that society has recognized an expectation of privacy in one's telephone conversation)], and the information disclosed here is not content information, but location information, so the case is inapplicable.  Moreover, Henderson asserts that the cell site location information "is exactly the type of information that must be disclosed only pursuant to warrant," citing a Third Circuit case for the proposition that "there is no dispute that historical [cell site location information] . . . falls within the scope of [18 U.S.C. §] 2703(c)(1)."  [Doc. 210 at 10(citing Sloviter Third Cir. Opinion, 620 F.3d at 304)].  However, 18 U.S.C. § 2703(c)(1) permits disclosure of such information not only pursuant to a warrant, see 18 U.S.C. § 2703(c)(1)(A), but pursuant to "a court order . . . under subsection (d)," see 18 U.S.C. § 2703(c)(1)(C).  Accordingly, this case does not provide support for the proposition that only a

asserts that historical cell site location information can be obtained using a court order under the SCA, and that prospective cell site location information can be obtained using both the Pen Registers and Trap and Trace Devices ("Pen Register Statute"), 18 U.S.C. § 3121 et seq., and the SCA,[16] [Doc. 285 at 10-34], that cell site location information is not implicated by the Fourth Amendment, [id. at 34-63], and that, in any event, even if some violation occurred, suppression is not the appropriate remedy either under the SCA or the exclusionary rule, [id. at 26-28, 63-75].

_____

warrant can be used to obtain cell site location information.

[16] This "hybrid theory" argument regarding prospective cellular site location information, presented at length in the government's brief, see [Doc. 285 at 10-14], has been summarized by other courts as follows:

> (1) [P]rospective cell site data falls within the . . . definitions of "pen register" and "trap and trace device" [in the Pen Register Act] because carriers use cell site data for "routing" calls to and from their proper destination; (2) [The Communications Assistance for Law Enforcement Act ("CALEA"), Pub. L. No. 103-414, § 103, 108 Stat. 4280, 4292 (codified in relevant part at 47 U.S.C. § 1002)] . . . prevent[s] disclosure of a caller's physical location "solely" pursuant to a pen/trap order, so the government need only have some additional authority besides the [Pen Register Statute] to gather prospective cell site information; (3) the SCA provides that additional authority, because cell site data is non-content subscriber information obtainable upon a "specific and articulable facts" showing under § 2703(d); and (4) . . . cell site data authorized by a § 2703(d) order may be collected prospectively by virtue of the forward-looking procedural features of the Pen/Trap Statute.

Orenstein N.Y. Opinion, 396 F. Supp. 2d at 316 (emphasis and citation omitted); see also 18 U.S.C. § 3127(3)-(4) (defining "pen register" and "trap and trace" device).

1.      *Statutory Authorization to Seek Cell Site Location Information*

    a.      <u>Historical Cell Site Location Information</u>

The SCA permits the government to obtain "a record or other information pertaining to a subscriber to or a customer of such service" from "a provider of electronic communication service or remote computing service" if that information does not include "the contents of a communication."  <u>See</u> 18 U.S.C. § 2703(c)(1).  The SCA defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  It defines "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . furnished or operated by any person engaged in providing such operating facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce," 18 U.S.C. § 2510(1), and defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but . . . not includ[ing] . . . any communication from a tracking device," 18 U.S.C. § 2510(12)(c) (<u>citing</u> 18 U.S.C. § 3117).  A "tracking

device" is defined in 18 U.S.C. § 3117 as "an electronic or mechanical device which permits the tracking of the movement of a person or object."  18 U.S.C. § 3117(b).

The SCA then outlines four ways the government can obtain such information. <u>See</u> 18 U.S.C. § 2703(c)(1)(A)-(D).  One such method is to obtain a court order.  <u>See</u> 18 U.S.C. § 2703(c)(1)(C), (d).  The court order for disclosure may be issued by any court of competent jurisdiction provided that the government offers "specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought[] are relevant and material to an ongoing criminal investigation."  18 U.S.C. §  2703(d).

Historical cell site location information clearly may be obtained under the SCA.  First, a company is an electronic communication service provider under the statute if it provides its customers the ability to send or receive wire <i>or</i> electronic communications.  <u>See</u> 18 U.S.C. § 2510(15) (emphasis added).  Thus, even if a cell phone is considered a "device which permits the tracking of the movement of a person or object," 18 U.S.C. § 3117, thereby excluding communications made from a cell phone from the definition of "electronic communications," <u>see</u> 18 U.S.C. § 2510(12), a cell phone company still qualifies as an electronic communication service provider if it provides its subscribers the ability to send and receive wire communications, <u>see</u> 18 U.S.C. § 2510(15); <u>see also</u> <u>In re Application of the U.S. for</u>

an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel. (Kaplan N.Y. Opinion), 460 F. Supp. 2d 448, 459-60 & n. 55 (S.D.N.Y. 2006) (declining to find that cell phone companies do not provide "electronic communications service[s]" merely because the service it provides does not fall under "electronic communication" since "electronic communication service" has its own independent meaning under the statute). Since a cell phone company clearly provides cell phone users the ability to send or receive "transfer[s] containing the human voice," 18 U.S.C. § 2510(1) (defining wire communication as "any aural transfer . . . "), § 2510(18) (defining aural transfer as "a transfer containing the human voice"), a cell phone service provider is a provider of an "electronic communication service" under the SCA.

Moreover, historical cell site location information is a "record or other information pertaining to a subscriber . . . or customer of" the electronic communication service provider. See 18 U.S.C. § 2703(c)(1); Sloviter Third Cir., 620 F.3d at 307-08 (third alteration in original) ("[T]here is no dispute that historical [cellular site location information] is a 'record or other information pertaining to a subscriber . . . or customer'"); In re Applications of the U.S. for Orders Pursuant to Title 18, U.S. Code Section 2703(d) (Stearns Mass. Opinion), 509 F. Supp. 2d 76, 79-80 (D. Mass. 2007) ("[H]istorical cell site information is a 'record or other information

15

pertaining to' a customer, as it contains data specific to the handling of a customer's call."); <u>Orenstein N.Y. Opinion</u>, 396 F. Supp. 2d at 307 n.10 (<u>citing</u> <u>In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.</u> (<u>Smith Tex. Opinion</u>), 396 F. Supp. 2d 747, 759 n.16 (S.D. Tex. 2005)) ("I have no doubt that the SCA authorizes a service provider's disclosure to law enforcement of historical cell site information, to the extent it maintains such records.").[17]

Finally, cellular site location information is not content information, defined by the SCA as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Cellular site location information, or the location of the cellular tower handling a particular phone call, discloses nothing about the substance of the call itself. Therefore, historical cell site location information constitutes a record of an electronic communication service provider that does not contain content information, and can be obtained under the SCA. <u>See, e.g.</u>,

---

[17] Defendants assert throughout their brief that cell site location information cannot be obtained under the SCA because it is not an "electronic communication" since it is really a communication from a tracking device. <u>See, e.g.</u>, [Doc. 207 at 12]. However, the SCA authorizes the government to obtain "record[s] or other information" from electronic communication service providers, not "electronic communications" from electronic communication service providers. <u>See</u> 18 U.S.C. § 2703; <u>Kaplan N.Y. Opinion</u>, 460 F. Supp. 2d at 460 & n.55 ("[Section 2703] . . . authorizes a court, upon a proper showing, to order disclosure of 'a record or other information pertaining to a subscriber to or a customer of an *electronic communications service.*' It does not authorize the disclosure of an '*electronic communication.*'"). Defendants have not asserted that the cell site location information obtained by the government is not a "record" of the electronic communication service provider.

<u>Sloviter Third Circuit Opinion</u>, 620 F.3d at 313; <u>In re Application of the U.S. for an Order Authorizing the Release of Historical Cell-Site Info.</u>, No. 10-MC-0550 (RRM), 2010 WL 5814659, at *1 (E.D.N.Y. Nov. 29, 2010); <u>United States v. Suarez-Blanca</u>, Criminal Indictment No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156, at *8-15 (N.D. Ga. Apr. 21, 2008); <u>In re Application of the U.S. for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device, and (2) Authorizing Release of Subscriber & Other Info.</u>, 622 F. Supp. 2d 411, 417-19 (S.D. Tex. 2007); <u>Stearns Mass Opinion</u>, 509 F. Supp. 2d at 76-81; <u>United States v. Arthur</u>, No. 4:07 CR 240 RWS DDN, 2007 WL 2002500, at *10 (E.D. Mo. July 5, 2007); <u>Smith Tex. Opinion</u>, 396 F. Supp. 2d at 748.[18]  Accordingly, the Henderson Disclosure Orders and the Powell Order, which only sought historical cellular site location information, and the Henderson Order, Dooley Orders, and Booker Orders, to the extent they sought historical cellular site location information, were lawfully obtained.

_____

[18] The only case cited by defendants in support of the argument that historical cell site location information cannot be obtained under the SCA which remains good law is <u>Austin Tex. Opinion</u>, 727 F. Supp. 2d at 571.  However, this decision was issued before the <u>Lenihan Pa. Decision</u>,  534 F. Supp. 2d at 587, 610-12, was vacated by the Third Circuit, <u>see</u> <u>Sloviter Third Circuit Opinion</u>, 620 F.3d at 313-19, and the magistrate judge relied so heavily upon the <u>Lenihan Pa. Decision</u>, that he expressly reserved his right to "revisit the issue of historical [cellular site location information]," after the Third Circuit handed down its Order in <u>Sloviter</u>.  <u>Austin Tex. Opinion</u>, 727 F. Supp. 2d at 578 n.21.

### b.     Prospective Cell Site Location Information

The SCA makes no distinction between historical and prospective cell site location information.  In the Henderson Order, Dooley Orders, and Booker Orders, the cell phone companies were ordered to send the government "cellular site information based on regularly recorded billing information . . . for a period of sixty (60) days, beginning [on the date of the respective Order]."  [Henderson Order at 15, 21; Doc. 285, Ex. 2 at 14, 20; Doc. 285, Ex. 3 at 16, 22; Doc. 433, Ex. 1 at 12, 18; Doc. 433, Ex. 2 at 13, 19; Doc. 433, Ex. 3 at 14, 20].  The orders specifically authorize the government "to receive this information only after the records or information have come into the possession, dominion, or control of the electronic communications service provider, such that the records are disclosed to the Government by an action undertaken by the electronic communications service provider."[19]  [Henderson Order at 21 n.2; Doc. 285, Ex. 2 at 20 n.2; Doc. 285, Ex. 3 at 22 n.2; Doc. 433, Ex. 1 at 19 n.2; Doc. 433, Ex. 2 at 20 n.2; Doc. 433, Ex. 3 at 21 n.2].

---

[19] The fact that the information sought by the government here is merely historical record information and not "real time" cell site location information extending forward from the date of the court order assuages some of the concerns raised in opinions concluding that the SCA cannot be used to obtain prospective cell site location data.  See, e.g., Orenstein N.Y. Opinion, 396 F. Supp. 2d at 314-15 & n.21 (noting that the government wished to obtain cell site information directly from the devices, not the provider's records, permitting real time acquisition of prospective cell site information and thus, tracking of an individual).

Accordingly, the Henderson Order, Dooley Orders, and Booker Orders merely authorized the cell phone companies to turn over to the government additional subscriber records after they came into the possession and control of the cell phone companies. While this information is "prospective" in the sense that the records had not yet been created at the time the Order was authorized, it is no different in substance from the historical cell site location information discussed above at the time it is transmitted to the government. <u>See</u> <u>In re Application of the U.S. for an Order for Disclosure of Telecomms. Records & Authorizing the Use of a Pen Register & Trap & Trace</u> (<u>Gorenstein N.Y. Opinion</u>), 405 F. Supp. 2d 435, 444 (S.D.N.Y. 2005) (stating that prospective cell site data is information under the SCA "inasmuch as cell site information is transmitted to the Government only after it has been in the possession of the cell phone company" and noting that nothing in the SCA limits when "information may come into being" leaving it "susceptible to an interpretation that the 'information' sought might come into being in the future"); <u>see also</u> <u>In re Application of the U.S. for an Order Authorizing the Use of Two Pen Register & Trap & Trace Devices</u> (<u>Garaufis N.Y. Opinion</u>), 632 F. Supp. 2d 202, 207 n.8 (E.D.N.Y. 2008) ("The prospective cell-site information sought by the Government . . . becomes a[n] 'historical record' as soon as it is recorded by the provider.").

This finding–that even prospective cell site location information falls under the SCA–is consistent with the overall statutory scheme as described in the "hybrid theory" advanced by the government. <u>See</u> [Doc. 285 at 14-18]. Under the Pen Register Statute, a pen register or trap and trace device can be obtained upon a showing that it is merely relevant to an ongoing criminal investigation. 18 U.S.C. §§ 3122(b)(2), 3123(a)(1). After the USA PATRIOT ACT ("Patriot Act") expanded the definition of pen register and trap and trace device to include "signaling information," <u>see</u> Pub. L. No. 107-56, § 216(c)(2), 115 Stat. 272, 290 (2001); <u>see also</u> <u>U.S. Telecomm. Ass'n v. FCC</u>, 227 F.3d 450, 458, 463-64 (D.C. Cir. 2000) (holding that "signaling information" includes cell site location information), the CALEA was amended to specifically prohibit prospective cell site location information from being obtained based "solely" on the low level of suspicion required by the Pen Register Statute, <u>see</u> CALEA § 103. This amendment reflected a congressional determination that a greater level of suspicion should be required to get "tracking or location information." <u>See</u> H.R. Rep. No. 103-827(I), at 19 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 3489, 3497; S. Rep. No. 103-402, at 18 (1994). As the SCA requires a showing of "specific and articulable facts" of "reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d), permitting law enforcement to obtain prospective

cell site location information through the SCA, which requires a greater level of showing than the Pen Register Statute, is consistent with the overall statutory scheme and congressional intent.[20]

### c. Remedy

With respect to remedy, the SCA explicitly provides that "any person who is aggrieved by any willful violation of this chapter . . . may commence an action in United States District Court against the United States to recover money damages." 18 U.S.C. § 2712(a). It further provides that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."[21] 18 U.S.C. § 2708; see also 18 U.S.C. § 2712(d) ("Any action against the United States under this subsection shall be the exclusive remedy against the United States for any claims within the purview of this section."). Accordingly, numerous federal courts have held that no statutory suppression remedy exists under the SCA. See United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011); United States v. Perrine, 518 F.3d 1196, 1202 (10th Cir. 2008); United States

---

[20] Thus, the issued court orders are consistent with defendants' assertion that the statutory scheme "does not authorize access to an individual's cell phone-derived 'location information', [sic] either past or prospective, on a simple showing of articulable relevance to an ongoing investigation (a 'reasonable relevance' standard)." [Doc. 207 at 3].

[21] Constitutional violations potentially arising from the SCA are addressed below. See discussion, infra at 26-30.

v. Steiger, 318 F.3d 1039, 1049 (11th Cir. 2003); United States v. Smith, 155 F.3d 1051, 1056 (9th Cir. 1998); Suarez-Blanca, 2008 WL 4200156, at *4 (citationsomitted) (concluding that "suppression is not a remedy for violating the SCA" in the context of historical cell site location information). Thus, even were the Court to conclude that procurement of either historical or prospective cell site location information through the court orders violated the SCA, "the defendants are not entitled to suppression of evidence based on the government's alleged violation of the SCA." Suarez-Blanca, 2008 WL 4200156, at *4; see also United States v. Flores, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *4 & n.1 (N.D. Ga. Sept. 27, 2007) (citations omitted) (citing United States v. Gbemisola, 225 F.3d 753, 757-58 (D.C. Cir. 2000)) (providing in the context of prospective cell site location information that "suppression is an inappropriate remedy for mere violation of [the SCA] without a further constitutional violation").

### 2. *The Fourth Amendment*

Even if the cell site location information was obtained lawfully under the SCA, the defendants assert that permitting the government to obtain location information by showing only specific and articulable facts, and without meeting the probable cause standard, violates the Fourth Amendment because they have a reasonable

expectation of privacy in cell site location information.[22] <u>See</u> [Doc. 207 at 3-10]. The Supreme Court "uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979) (citations omitted). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." <u>Suarez-Blanca</u>, 2008 WL 4200156, at *5 (alteration omitted) (<u>quoting</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 n.12 (1978)). "Thus, an individual asserting Fourth Amendment rights 'must

---

[22] The government asserts that defendants Dooley, Little, and Powell have not shown that they have standing to raise a Fourth Amendment challenge to the acquisition of the cell site location records. <u>See</u> [Doc. 285 at 34-35; Doc. 408 at 16-17]; <u>see also</u> [Doc. 213 at 2 (Dooley not identifying any telephone number belonging to him but asserting that he filed his motion "out of an abundance of caution"); Doc. 214 at 1 (Little not identifying any telephone number belonging to him but asserting that the obtainment of cellular site location information "directly affected" him)]; <u>see also</u> <u>United States v. DeGaule</u>, 797 F. Supp. 2d 1332, 1362-63 (N.D. Ga. 2011), adopted at 1344 (finding that defendant failed to show any reasonable expectation of privacy in telephones where other persons were identified as the subscribers and users of the telephones). <u>But see</u> [Doc. 398 (Dooley identifying three phone numbers for which law enforcement obtained cell site location information as his telephones)]. However, even assuming that Dooley, Little, or Powell could "demonstrate that he personally has an expectation of privacy in the place searched," the subsequent analysis will show that any Fourth Amendment challenge regarding the cell site location information would fail as any such expectation is not objectively reasonable. <u>See</u> <u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998).

demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]'" Id. at *6 (alteration in original) (quoting Carter, 525 U.S. at 88).

### a. Cell Site Location Information as a Third Party Business Record

The Supreme Court has explicitly held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith, 442 U.S. at 743-44 (citations omitted). Accordingly, "there is no privacy interest in records kept in the course of a business" and "courts have determined that an individual does not have standing to challenge law enforcement's acquisition of a wide array of information that is held by third parties." Suarez-Blanca, 2008 WL 4200156, at *8 (citations omitted); see also SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 743 (1984) (citation omitted) ("It is established that when a person communicates information to a third party . . ., he cannot object if the third party conveys that information or records thereof to law enforcement authorities."). Examples of such information include bank records created in the ordinary course of business, United States v. Miller, 425 U.S. 435, 442-44 (1976), credit card statements, United States v. Phibbs, 999 F.2d 1053, 1078 (6th Cir. 1993), kilowatt consumption from electric utility records, United States v. Starkweather, No. 91-030354, 972 F.3d 1347, 1992 WL 204005, at *1-2 (9th Cir. Aug. 24, 1992), motel registration records, United States v.

<u>Willis</u>, 759 F.2d 1486, 1498 (11th Cir. 1985), and employment records, <u>United States</u> <u>v. Hamilton</u>, 434 F. Supp. 2d 974, 979-80 (D. Or. 2006).

Cell site location information is voluntarily turned over to third parties and constitutes part of a record kept in the course of the cell phone company's business, <u>see</u> 18 U.S.C. § 2703 (authorizing the government to seek "record[s] or other information pertaining to a subscriber . . . or customer of" electronic communication service providers), and as such, defendants have no reasonable expectation of privacy in the information. In <u>Smith</u>, the Supreme Court determined that there was no reasonable expectation of privacy in pen registers, reasoning that telephone users sufficiently understood that the phone company (1) had facilities for recording phone numbers, and (2) did in fact record that information for legitimate business purposes. 442 U.S. at 742. Similarly, today, mobile telephone users sufficiently understand that the cell phone company (1) has facilities for recording the cellular tower information employed in dialing a number, and (2) does in fact record that information for legitimate business purposes, such as billing different rates when the customer is "roaming." <u>See</u> <u>United States v. Graham</u>, 846 F. Supp. 2d 384, 389 (D. Md. 2012); <u>United States v. Gordon</u>, Criminal Action No. 09-153-02 (RMU), at [Doc. 208 at 2-3] (D.D.C. Feb. 6, 2012); <u>United States v. Dye</u>, No. 1:10CR221, 2011 WL 1595255, at *9 (N.D. Ohio Apr. 27, 2011); <u>United States v. Velasquez</u>, No. CR 08-0730-WHA, 2010

WL 4286276, at *5 (N.D. Cal. Oct. 22, 2010); <u>United States v. Benford</u>, No. 2:09 CR 86, 2010 WL 1266507, at *3 (N.D. Ind. Mar. 26, 2010) ("[D]efendant had no legitimate expectation of privacy in records held by a third-party cell phone company identifying which cell phone towers communicated with defendant's cell phone at particular points in the past."); <u>In re Application of the U.S. for an Order Authorizing the Disclosure of Cell Site Location Info.</u>, No. 6:08-6038M-REW, 2009 WL 8231744, at *10 (E.D. Ky. Apr. 17, 2009) ("[A] cell phone user that places or receives a call knows that he or she is participating in and relying on the cell provider's network and switching equipment. Indeed, the very act of connection–including cell site activations-- requires participation, by the user, in the facilities provided by the particular company for the purpose of call completion."); <u>Suarez-Blanca</u>, 2008 WL 4200156, at *9 ("[I]n dialing certain numbers, the defendants . . . voluntarily agreed to turn over information about which towers were used in placing those calls."); <u>United States v. Perez-Alonzo</u>, No. CRIM.03-221(1), (2) A, 2003 WL 22025863, at *2 (D. Minn. Aug. 27, 2003) (holding that the defendant had no reasonable expectation of privacy in his mobile phone records). Accordingly, the cell phone user assumes the risk that the company could reveal that legitimate business information to others, including law enforcement authorities, as part of an investigation. <u>See</u> <u>Smith</u>, 442 U.S. at 744. As the Supreme Court "consistently has held that a person has no

legitimate expectation of privacy in information he voluntarily conveys to third parties" any expectation of privacy defendants assert in cell site location information contained in cell phone company records "is not one that society is prepared to recognize as reasonable" and as such, the information is not protected by the Fourth Amendment.  Id. at 743-44; see also Graham, 846 F. Supp. 2d at  389 (citing United States v. Jones,132 S.Ct. 945, 964 (2012)) (finding that defendants do not have a legitimate expectation of privacy in historical cell site location information, and noting that "[w]hile the implications of law enforcement's use of this historical cell site location data raise the specter of prolonged and constant government surveillance, Congress in enacting the [SCA], has chose to require only 'specific and articulable facts' in support of a government application for such records" and that if "the arc of technological improvement . . . should be altered in a way that does infringe a person's legitimate expectation of privacy, the solution is properly for the legislature to address").

### b. Cell Site Location Information as a Tracking Device

Even if the Court accepted defendants' contention that  cell phone companies are not electronic communication service providers because a cell phone is a tracking device under 18 U.S.C. § 3117, see [Doc. 207 at 12],[23] not all tracking information

---

[23] Although 18 U.S.C. § 3117(b) says that a "tracking device" is "an electric or mechanical device which permits the tracking of the movement of a person or

implicates the Fourth Amendment. In <u>Jones</u>, the Supreme Court recently clarified

its Fourth Amendment jurisprudence regarding tracking devices, holding that the

Fourth Amendment was violated where the "government physically occupie[s]

private property for the purpose of obtaining information." 132 S.Ct. at 949. Thus,

if the government physically attaches a tracking device to a defendant or a

defendant's possession, its action implicates the Fourth Amendment. <u>Id.</u> at 949-51.

---

object," 18 U.S.C. § 3117(a) makes clear that the statute as a whole is concerned with
the "*installation* of a mobile tracking device." <u>See</u> 18 U.S.C. § 3117(a)-(b) (emphasis
added). Thus, while a cell phone can permit tracking the movement of a person, a
cell phone is not "installed" by the government in order to track a defendant, making
it less clear that a cell phone is the type of tracking device identified by 18 U.S.C. §
3117. <u>See</u> <u>Richards v. United States</u>, 369 U.S. 1, 11 (1962) (citations omitted) ("We
believe it fundamental that a section of a statute should not be read in isolation from
the context of the whole Act."); <u>see also</u> <u>Sloviter Third Cir. Opinion</u>, 620 F.3d at 313
("We therefore cannot accept the [magistrate judge's] conclusion that [cell site
location information] by definition should be considered information from a tracking
device."); <u>In re Application for an Order Authorizing the Extension & Use of a Pen
Register Device etc,</u> (<u>Hollows Cal. Opinion</u>), No. 07-SW-034 GGH, 2007 WL 397129,
at *2 (E.D. Cal. Feb. 1, 2007) (emphasizing that finding a cell phone to be a tracking
device under § 3117 would make the definition so expansive that it could include red
light cameras, parking lot camera, freeway cameras, or even a relay of visual
surveillance since all "permit" the tracking of a suspect); <u>Kaplan N.Y. Opinion</u>, 460
F. Supp. 2d at 461 (emphasis omitted) (finding that a cell phone is not a tracking
device because "the government does not seek to install any sort of tracking device");
<u>In re Application of the U.S. for an Order: (1) Authorizing the Installation & Use of
a Pen Register & Trap & Trace Device; & (2) Authorizing Release of Subscriber Info.
and/or Cell Site Info.</u> (<u>Hornsby La. Opinion</u>), 411 F. Supp. 2d 678, 681 (W.D. La.
2006) ("The existence of a true 'tracking device' is unknown to, and cannot be
disabled or turned off by, the person being tracked."); <u>Gorenstein N.Y. Opinion</u>, 405
F. Supp. 2d at 449 n.8 (providing that § 3117 "contemplates the 'installation' of a
tracking device, which has not been sought").

However, the government has attached no such tracking device here; instead, it merely obtained information transmitted by a cell phone device already in the voluntary possession of a suspect. Thus, there was no Fourth Amendment violation tied to common law notions of trespass in this case. See id.

However, as the Jones Court clarified, "the Katz[ v. United States, 389 U.S. 347 (1967)] reasonable-expectation-of-privacy test has been *added to,* not *substituted for,* the common-law trespassory test." Id. at 952. Thus, the Fourth Amendment is implicated, even absent trespass, when a defendant's reasonable expectations of privacy are violated. See id.; Katz, 389 U.S. at 360-62 (Harlan, J. concurring). With respect to tracking devices specifically, in United States v. Knotts, 460 U.S. 276 (1983), the Supreme Court held that a defendant had no reasonable expectation of privacy in his movement on a public highway, and thus the warrantless installation of a tracking device used to follow his public movements did not implicate the Fourth Amendment. Id. at 281-83.[24] The Court stated that "[n]othing in the Fourth

_____

[24] However, in United States v. Maynard, 615 F.3d 544 (D.C. Cir. 2010), the Court of Appeals for the D.C. Circuit held that the use of a GPS tracking device to conduct "prolonged" monitoring (over the course of 28 days) of the public movements of a suspect's vehicle did implicate the Fourth Amendment by violating the defendant's reasonable expectation of privacy. Id. at 556, 562. But see United States v. Sparks, 750 F. Supp. 2d 384, 392 (D. Mass. 2010) (rejecting the reasoning of Maynard). In so doing, the court reasoned that the defendant's aggregate movements were not actually exposed to public view because it was unlikely that a stranger would observe all the defendant's public movements over such a long period, giving the defendant a reasonable expectation of privacy in his public movement over a long period of time. Maynard, 615 F.3d at 560, 563. Despite some

29

Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford[] them." Id. at 282.   However, warrantless installation of a tracking device to follow the movements of a defendant within a space where he has an established reasonable

---

district court cases to the contrary, see, e.g., In re Application of the U.S. for an Order Authorizing the Release of Historical Cell-Site Info., No. 10-MC-897 (NGG), 2011 WL 3678934, at *12 (E.D.N.Y. Aug. 22, 2011); In re Application of the U.S. for Historical Cell Site Data, 747 F. Supp. 2d 827, 837-38 (S.D. Tex. 2010), the undersigned finds that this case has no bearing on the type of cell site location information sought in the present case.   First, Maynard dealt with GPS information from a device that was covertly installed on defendant's vehicle, see 615 F.3d at 555,   whereas the information here is cell site location information from a device that defendants voluntarily used with an awareness that the data was being created, an important distinction given the Supreme Court's holding in Jones, see 132  S.Ct. at 949-51. Moreover, in Maynard the GPS tracker constantly transmitted precise location data to law enforcement on a real-time basis, see 615 F.3d at 555, whereas  the cell site location information in the present case was only recorded while a call was being made, see [Henderson Order at 18; Doc. 285, Ex. 2 at 17; Doc. 285, Ex. 3 at 19; Doc. 433, Ex. 1 at 16; Doc. 433, Ex. 2 at 17; Doc. 433, Ex. 3 at 18], and was turned over to law enforcement after the fact, see [Henderson Order at 21 n.2; Doc. 285, Ex. 2 at 20 n.2; Doc. 285, Ex. 3 at 22 n.2; Doc. 433, Ex. 1 at 19 n.2; Doc. 433, Ex. 2 at 20 n.2; Doc. 433, Ex. 3 at 21 n.2]; see also Graham, 846 F. Supp. 2d at 392-93  (distinguishing historical cell site location information because the GPS data in Maynard came from a covertly installed device, not the SCA; permitted real-time tracking of movement; and was "far more precise").   Accordingly, the Maynard Court's concern that a precise, complete, aggregate picture of defendant's movements over time would invade his reasonable expectation of privacy is not implicated by the type of information sought in this case, which at best only revealed to law enforcement the general location of defendants at times in the past when they made and received phone calls.  Furthermore, even ignoring all these differences, defendants had no expectation of privacy in the aggregate location information obtained because that entire collection of information was already "actually exposed" to a third-party, the cell phone service providers and made a part of their regular business records.  See discussion, supra at 22-25.

expectation of privacy has been held to implicate the Fourth Amendment. <u>See</u> <u>United States v. Karo</u>, 468 U.S. 705, 714 (1984) (holding that the warrantless installation of a tracking device to follow defendant's movements within a private residence implicated the Fourth Amendment).

Here, the cell site information sought by the government included only "(1) the cell site to which the Target Telephone sends its signal when a call is placed or received; (2) the cell site through which the call is routed when the call ends; and (3) the cell site during the call, if available," [Henderson Order at 18; Doc. 285 Ex. 2 at 17; Doc. 285 Ex. 3 at 19; Doc. 433 Ex. 1 at 16; Doc. 433 Ex. 2 at 17; Doc. 433 Ex. 3 at 18], where "cell site" referred to "the site of the antenna tower to which the cell phone is sending its signal," and included both "antenna tower and sector information, if maintained by the cellular telephone company," [Henderson Order at 18 n.1; Doc. 285, Ex. 2 at 17 n.1; Doc. 285, Ex. 3 at 19 n.1; Doc. 433, Ex. 1 at 16 n.1; Doc. 433, Ex. 2 at 17 n.1; Doc. 433, Ex. 3 at 18 n.1]. The cell site information sought specifically did not include "any cell site information that might be available when the user's cell phone was turned on but a call was not in progress; (2) information from multiple cellular towers simultaneously that allows the precise triangulation of the location of [the] cell phone; [or] (3) GPS information on the location of the user, even if that technology is built into the user's cell phone." [Henderson Order at 18; Doc. 285, Ex.

2 at 17; Doc. 285, Ex. 3 at 19; Doc. 433, Ex. 1 at 16; Doc. 433, Ex. 2 at 17; Doc. 433, Ex. 3 at 18].

The general nature of the location information sought by the government here--merely the cell towers and sectors used during each call--does not bring it into the realm of Fourth Amendment protection.  This abstract level of location information "does not provide a 'virtual map' of the user's location "or "pinpoint a user's location within a building.  Instead, it only identifies a nearby cell tower and . . . a 120-degree face of that tower."  Gorenstein N.Y. Opinion, 405 F. Supp. 2d at 449. In other words, "the Government will know only that the user has made or received a call on his cell phone, and that his cell phone communicated with a particular tower or towers during the call."  Hornsby La. Opinion, 411 F. Supp. 2d at 682. "Under these particular circumstances,[25] no Fourth Amendment concerns are

_____

[25] "These particular circumstances" are circumstances in which the court order does not authorize the government to obtain information when the cell phone is turned on but a call is not being made, GPS information, or simultaneous information from several towers permitting triangulation, [Henderson Order at 18; Doc. 285, Ex. 2 at 17; Doc. 285, Ex. 3 at 19; Doc. 433, Ex. 1 at 16; Doc. 433, Ex. 2 at 17; Doc. 433, Ex. 3 at 18], which are distinguishable from the circumstances under which applications for prospective cell site location information were denied in many cases cited by defendants, see, e.g., Austin Tex. Opinion, 727 F. Supp. 2d at 580 (denying application after discussion of the GPS capabilities of cell phones); Smith Tex. Opinion, 396 F. Supp. 2d at 749 (denying application seeking "the strength, angle, and timing of the caller's signal measure at two or more call sites, as well as other system information such as the listing of all cell towers in the market area, switching technology, protocols, and network architecture"); McMahon N.Y. Opinion, 2009 WL 159187, at *3 (rejecting application following a discussion of the triangulation process and its ability to locate particular phones); see also In re Application of the U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel., Case

implicated." Id. (footnote added); cf. United States v. Valasquez, No. CR 08-0730 WHA, 2010 WL 4286276, at *5 (N.D. Cal. Oct. 22, 2010); Garaufis N.Y. Opinion, 632 F. Supp. 2d at 208; Suarez-Blanca, 2008 WL 4200156, at *10; Stearns Mass. Opinion, 509 F. Supp. 2d at 81; In re Application of the U.S. for an Order Authorizing the Installation & Use of a Pen Register Device, a Trap & Trace Device, & for Geographic Location Info., 497 F. Supp. 2d 301, 311-12 (D.P.R. 2007).

### c.    **Remedy**

Even were the Court to determine that defendants had a reasonable expectation of privacy in cell site location information, implicating the Fourth Amendment in the absence of any trespass and rendering the SCA, which authorizes collection of that information without a showing of probable cause, unconstitutional, suppression of the evidence seized is not the appropriate remedy because the agents reasonably relied in good faith on the court orders. Under United States v. Leon, 468 U.S. 897 (1984), "the good faith exception to the exclusionary rule 'stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.'" United States v. Vanbrackle, 397 F. App'x 557, 559 (11th Cir. 2010) (per curiam) (unpublished) (quoting United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002)); see also United States v. Robinson, 336

_____

No. 10-2188-SKG, 2011 WL 3423370, at *38 (D. Md. Aug. 3, 2011)

F.3d 1293, 1295-96 (11th Cir. 2003). The exception is founded on the principle that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates," <u>Leon</u>, 468 U.S. at 914; <u>see also</u> <u>Herring v. United States</u>, 555 U.S. 135, 137 (2009) ("[T]he question [of suppression] turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct."); <u>Arizona v. Evans</u>, 514 U.S. 1, 14 (1995) (citation omitted) ("[T]he exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees."), and "[p]enalizing an officer for the magistrate's error, rather than his own, [therefore] cannot logically contribute to the deterrence of Fourth Amendment violations," <u>Leon</u>, 468 U.S. at 921.

Accordingly, the exception has been expanded to apply where "officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." <u>Illinois v. Krull</u>, 480 U.S. 340, 342 (1987). In so doing, the Court reasoned "application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." <u>Id.</u> at 349. Under the exception, good faith is an objective standard judged by what a reasonable law enforcement officer would perceive under the circumstances, not a standard judged

by a legally trained magistrate or judge.  <u>United States v. Taxacher</u>, 902 F.2d 867, 871-72 (11th Cir. 1990) (<u>quoting</u> <u>Leon</u>, 468 U.S. at 918-19).  With respect to reasonable reliance on statutes, this standard permits an officer to rely on the judgment of the legislature that passed the law unless the statute is "clearly unconstitutional."  <u>Krull</u>, 480 U.S. at 349-50.[26]

The officers acted in reasonable reliance on the SCA to obtain both historical and prospective cell site location information.  As outlined above, the vast majority of courts addressing the issue have found that the SCA authorizes law enforcement to obtain historical cell site location information.  <u>See</u> cases cited, <u>supra</u> at 12-13. Thus, "it was objectively reasonable for law enforcement to rely on [§ 2703(d)] to obtain historical cell site information because some case law suggests that [§ 2703(d)] applies to the historical cell site information and there was not much case law that questioned the constitutionality of [§ 2703(d)] for historical cell site information at the

---

[26] Recognizing that the good faith exclusionary rule would thus permit introduction of almost all evidence seized pursuant to judicial authorization, the Supreme Court also identified four specific situations in which the exception to the exclusionary rule would not apply: (1) where the warrant [or court order] is so facially deficient that the executing officers cannot reasonably presume it to be valid; (2) where the issuing magistrate was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (3) where the issuing magistrate wholly abandoned his judicial role; and (4) where the supporting affidavit is so lacking in indicia of probable cause [or specific and articulable facts relevant and material to an ongoing criminal investigation] as to render official belief in its existence entirely unreasonable.  <u>Leon</u>, 468 U.S. at 923; <u>see also</u> <u>Martin</u>, 297 F.3d at 1313.  Defendants have advanced no argument that the court orders here fall into any of these categories.

time that the government sought approval for obtaining the historical cell site information." <u>Suarez-Blanca</u>, 2008 WL 4200156, at *12. Accordingly, even were the Court to determine that historical cell site location information is implicated by the Fourth Amendment, the good faith exception to the exclusionary rule would apply. See <u>Krull</u>, 480 U.S. at 342.

Although case law regarding the procurement of prospective cell site information under the SCA and Pen Register Statute is more divided, there are still several court opinions that have expressly approved of the practice. <u>See, e.g.</u>, <u>Gorenstein N.Y. Opinion</u>, 405 F. Supp. 2d at 444-50; <u>Kaplan N.Y. Opinion</u>, 460 F. Supp. 2d at 450; <u>Hollows Cal. Opinion</u>, 2007 WL 397129, at *2; <u>Hornsby La. Opinion</u>, 411 F. Supp. 2d at 682-83 (allowing the government to obtain prospective cellular site location records with "express limitations"); <u>In re Application of the U.S. for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device, & (2) Authorizing Release of Subscriber & Other Info.</u>, 433 F. Supp. 2d 804, 804 (S.D. Tex. 2006). Moreover, as discussed above, many cases in which similar orders were rejected involved requests for more precise location information. <u>See, e.g.</u>, <u>Smith Tex. Opinion</u>, 396 F. Supp. 2d at 749 (seeking "the strength, angle, and timing of the caller's signal measure at two or more call sites, as well as other system information such as the listing of all cell towers in the market area, switching technology, protocols, and network architecture"); <u>In re Application of the U.S. for</u>

an Order Authorizing Installation & Use of a Pen Register & a Caller Identification Sys. on Tel. Numbers [Sealed] & [Sealed] & the Production fo Real Time Cell Site Info., 402 F. Supp. 2d 597, 598 (D. Md. 2005) (internal marks omitted) (seeking "real time cell site information which would reveal the physical location of the person in possession of the cell phone whenever the phone was on").  Thus, the use of § 2703(d) to obtain prospective cell site location information of the type requested by the government here cannot be said to be "clearly unconstitutional" and, in the event such information were found to implicate the Fourth Amendment, the good faith exception to the exclusionary rule would apply.  Krull, 480 U.S. at 349-50.

## B.    Search of the Jay Street Residence

Henderson additionally moves to suppress evidence arising from the search of the Jay Street residence on the grounds that the affidavit submitted to obtain the warrant to search the premises relied on cell site location information.  [Doc. 210].  He asserts that the search of the residence was unsupported by probable cause because the information derived from his illegally seized cell phone records must be redacted from the affidavit submitted in support of the search warrant application when reviewing that affidavit for probable cause.  See [id. at 13-14].  However, as the undersigned finds that the cell site location information was lawfully obtained, Henderson's argument fails.  Moreover, even if the Court found that the cell site location information should be suppressed and redacted from the affidavit and that

the redaction rendered the affidavit unsupported by probable cause, the law enforcement officers performing the search of the Jay Street residence acted in reasonable reliance upon the search warrant, and the good faith exception to the exclusionary rule would apply such that suppression of the evidence seized during the search of the residence is not warranted. See Leon, 468 U.S. at 914; Vanbrackle, 397 F. App'x at 559 (quotation omitted); Robinson, 336 F.3d at 1295-96. Therefore, it is **RECOMMENDED** that Henderson's motion to suppress evidence, [Doc. 210], be **DENIED** with respect to evidence seized from the search of the Jay Street residence.

### III. CONCLUSION

For the foregoing reasons and cited authority, all requests for an evidentiary hearing are **DENIED**, and Dooley, Little, Henderson, and Powell's motions to adopt, [Docs. 213, 214, 218, 395], are **GRANTED**, and it is **RECOMMENDED** that Booker, Henderson, and Powell's motions to suppress evidence, [Docs. 207, 210, 388], be **DENIED**.

**IT IS SO ORDERED AND RECOMMENDED**, this 6th day of September, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE