IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE NO. 1:11-cr-00255-TWT-RGV |
| ASHLEY HENDERSON | |

### ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Criminal Rule 59(2)(a)-(b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. Failure to object to this Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(D) and (H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** and **DIRECTED**, this 13th day of December, 2012.

_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASHLEY HENDERSON | CRIMINAL CASE NO.<br>1:11-cr-00255-TWT-RGV |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant Ashley Henderson ("Henderson") is charged in a fifteen-count indictment with (1) unlawfully obstructing, delaying, and interfering with interstate commerce by taking personal property in the custody and control of armored car couriers by means of actual and threatened force, violence, and fear of injury, and conspiring to do so, in violation of 18 U.S.C. §§ 1951 and 2; (2) carrying and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and (3) causing the death of a person through using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 2. See [Doc. 312].[1]

---

[1] The document and page numbers listed in citations to the record refer to the documents and pages listed in the Adobe file reader linked to this Court's electronic filing database, CM/ECF.

On October 13, 2011, Henderson filed a preliminary motion for dismissal of the indictment due to discrimination in the selection of the grand jury, [Doc. 190], and a preliminary motion challenging the petit jury selection process, [Doc. 191]. Following additional discovery, he filed a perfected motion to dismiss for constitutionally infirm grand jury selection on August 31, 2012. [Doc. 484]; see also [Doc. 517-1 (expert's statistical analysis offered in support of motion)].[2] The government has filed a response to Henderson's motion, [Doc. 549], to which Henderson has replied, [Doc. 556].[3] For the following reasons, it is

---

[2] The Court ordered Henderson to perfect both of his motions related to jury selection by August 31, 2012. See [Doc. 470]. Since he has not filed a perfected motion related to the petit jury selection process, he has waived any challenge thereto and it is therefore **RECOMMENDED** that Henderson's motion challenging the petit jury selection process, [Doc. 191], be **DENIED**. See [Doc. 47 at 15 (noting that "[w]hen a party fails to supplement or perfect a motion within the time afforded after having requested or been given an opportunity to supplement or perfect said motion, the Court may deem the original motion abandoned or withdrawn")]; see also United States v. Cintora-Gonzalez, Criminal Case No. 1:12-cr-00078-ODE-RGV, 2012 WL 4403000, at *2 (N.D. Ga. Aug. 10, 2012), adopted by 2012 WL 44081000, at *1 (N.D. Ga. Sept. 21, 2012) (citations omitted).

[3] The government also filed a surreply on December 5, 2012. See [Doc. 558]. However, "[n]either the Federal Rules nor the Court's Local Rules allow sur-reply briefs as a matter of right, and the Court normally does not permit sur-replies." USMoney Source, Inc . v. Am. Int'l Specialty Lines Ins. Co., No. 1:07-cv-0682-WSD, 2008 WL 160709, at *2 n.5 (N.D. Ga. Jan. 15, 2008), rev'd on other grounds, 288 F. App'x 558 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); see also Leatherwood v. Anna's Linens Co., 384 F. App'x 853, 857 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted). "Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists,

**RECOMMENDED** that Henderson's motion challenging the grand jury selection as unconstitutional, [Doc. 190], be **DENIED**.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a jury selected from a group representing a fair cross-section of the community. Duren v. Missouri, 439 U.S. 357, 364 (1979); United States v. Terry, 60 F.3d 1541, 1543 (11th Cir. 1995) (citing Taylor v. Louisiana, 419 U.S. 522, 528-30 (1975)). Henderson contends that the method of selecting jurors in the Northern District of Georgia violates this "fair cross-section" right because it results in an underrepresentation of African-Americans on grand juries. See generally [Doc. 484]. Specifically, he asserts that the method implemented to create the Qualified Participants List from which grand jurors are ultimately selected results in an underrepresentation of individuals from the Atlanta Division, where 86.90 percent of the African-Americans in the Northern District of Georgia live, and an overrepresentation of the Newnan Division, where only 7.12 percent of the African-

---

such as where the movant raises new arguments in its reply brief." Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1997 (N.D. Ga. 2005 ) (citations omitted); see also St. James Entm't LLC v. Dash Crofts, Civil Action No. 1:09-CV-1975-RWS, 2010 WL 2802616, at *1 (N.D. Ga. July 13, 2010) ("Certainly, the Court is disinclined to consider arguments raised in a surreply which could have been raised in an earlier filing."). The government's surreply only addresses Henderson's earlier request for an evidentiary hearing. See generally [Doc. 558]; see also [Doc. 484]. Accordingly, the Court has not considered the arguments raised in the government's surreply.

Americans in the Northern District of Georgia live, and as a result creates an underrepresentation of African-Americans on grand juries. See [id. at 5-6]; see also [Doc. 517-1 at 5-7].

To demonstrate a prima facie violation of the fair cross-section requirement, Henderson must establish:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren, 439 U.S. at 364; see also Castaneda v. Partida, 430 U.S. 482, 494 (1977) (describing the third prong of the test as a showing that the "selection procedure is susceptible of abuse or is not racially neutral"). "The burden of proving a fair-cross-section violation falls on [Henderson]." United States v. LeCroy, Criminal Action No. 2:02-CR-38-RWS-SSC, Civil Action No. 2:08-CV-2277-RWS, 2012 WL 1114238, at *59 (N.D. Ga. Mar. 30, 2012) (internal marks omitted) (quoting Berryhill v. Zant, 858 F.2d 633, 638 (11th Cir. 1988)). If Henderson "fails to establish even one element of the prima facie case, then the Sixth Amendment 'fair cross-section' challenge

4

fails." Id. (emphasis omitted) (citing United States v. Pepe, 747 F.2d 632, 649 (11th Cir. 1984)).[4]

Even if Henderson could establish the first and third elements of his challenge by showing that the group alleged to be excluded is distinctive[5] and that systematic exclusion of the group is occurring in the jury selection process,[6] his challenge still fails because he cannot show that the representation of African-Americans is not fair and reasonable in relation to the number of such persons in the community. See Duren, 439 U.S. at 364 (citations omitted). With respect to determining whether representation of a group is reasonable, the Eleventh Circuit has consistently found

---

[4] To the extent Henderson asserts a statutory fair cross-section violation under 28 U.S.C. § 1861, the same analysis governs his claim. See United States v. Carmichael, 560 F.3d 1270, 1278 (11th Cir. 2009) (citation omitted).

[5] Henderson identifies this group as "African-Americans," which are considered a distinct class for purposes of a fair cross-section challenge. See [Doc. 484 at 7]; see also Cunningham v. Zant, 928 F.2d 1006, 1013 (11th Cir. 1991) (citations omitted) (" . . . African-Americans are distinctive community groups within the meaning of *Duran*."). However, the government points out that what Henderson actually asserts "is an underrepresentation of the Atlanta Division and an overrepresentation of the Newnan Division, and therefore, an underrepresentation of African-Americans that reside in the Atlanta Division" and he "fails to present any evidence sufficient to show that the Atlanta Division, in and of itself, . . . represents a distinct class for purposes of a fair cross-section claim." [Doc. 549 at 5-6].

[6] The government points out that Henderson has offered "no specific or particular evidence of exclusion of African-Americans *attributable* to the system of selecting potential grand jurors in the Northern District of Georgia." [Doc. 549 at 9].

that a prima facie case of underrepresentation cannot be made where the absolute disparity[7] between the percentage of the distinct group on the Qualified Jury Wheel and the percentage in the voter population is less than ten percent. See Grisham, 63 F.3d at 1078-79 & n.4 (citations omitted) (stating that "[i]f the absolute disparity. . . is 10 percent or less, the second element [of the fair cross-section challenge] is not satisfied" and noting that only the Supreme Court or the Eleventh Circuit sitting en banc has the power to overrule to 10 percent absolute disparity requirement); United States v. Rodriguez, 776 F.2d 1509, 1511 (11th Cir. 1985) (citations omitted). Here, Henderson's evidence shows that the absolute disparity of African-Americans ranged from 3.77 percent to 7.10 percent. [Doc. 517-1 at 18]. Accordingly, he cannot make out a case for a fair cross-section violation, and it is therefore

---

[7] Absolute disparity is calculated by subtracting the percentage of a group in the jury wheel from the percentage of the eligible voters from that same group in the general population. See United States v. Grisham, 63 F.3d 1074, 1079 (11th Cir. 1995); LeCroy, 2012 WL 1114238, at *60 (citation omitted). To the extent Henderson and his expert assert that comparative disparity should be considered instead of the absolute disparity measure, the Eleventh Circuit has explicitly rejected this approach. See Pepe 747 F.2d at 649 n.18 (citing United States v. Maskeny, 609 F.2d 183, 190 (5th Cir. 1980) (rejecting comparative disparity and standard deviation analysis where, as here, the group being discriminated against was not so small as to permit "total exclusion . . . of a minority that comprised less than ten percent of the population of the community")). Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

**RECOMMENDED** that Henderson's motion challenging grand jury selection as unconstitutional, [Doc. 190], be **DENIED**.[8]

**IT IS SO RECOMMENDED**, this 13th day of December, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[8] Henderson requested a hearing on this motion wherein his expert would "discuss his research and findings" and "introduce those exhibits which support [his] statistical analysis." [Doc. 484 at 2 n.1]; see also [Doc. 556 at 4 (noting that the fair and reasonable representation and systematic discrimination elements of the fair cross-section challenge are "too complex to be resolved in briefings and require the testimony of counsel's grand jury expert")]. However, Henderson's expert's findings regarding absolute disparity are clear from the report he submitted as evidence in support of his motion, see [Doc. 517-1], and given that Eleventh Circuit precedent clearly establishes both that absolute disparity is the relevant measure and that it must reach at least ten percent to establish a prima facie case, it is clear from the evidence before the Court that Henderson's motion is due to be denied without further factual development in an evidentiary hearing. Accordingly, Henderson's request for an evidentiary hearing on this motion is **DENIED**. See Terry, 60 F.3d at 1544 n.2 (holding that the district court did not abuse its discretion by denying defendant a hearing with respect to his fair cross-section claim, "[b]ecause no set of facts that could have been developed in an evidentiary hearing would be significant legally in light of [] precedent . . .").

7