**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ASHLEY HENDERSON, | :: | MOTION TO VACATE |
|     Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:11-CR-0255-TWT-RGV-4 |
| UNITED STATES OF AMERICA, | :: | |
|     Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:15-CV-4134-TWT-RGV |

**FINAL REPORT AND RECOMMENDATION**

This matter has been submitted to the undersigned Magistrate Judge for consideration of Ashley Henderson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 728], the government's response, [Doc. 734], and Henderson's reply, [Doc. 738]. Following a March 30, 2017, evidentiary hearing, [Doc. 803], and having considered the motion, the evidence presented, and the parties' post-hearing briefs, [Docs. 804; 815], it is **RECOMMENDED** that Henderson's § 2255 motion be **DENIED**.

**I. PROCEDURAL HISTORY**

A federal grand jury in the Northern District of Georgia returned a fifteen-count superseding indictment against Henderson and eight co-defendants, charging Henderson in Count One with conspiring to interfere with interstate commerce by

taking personal property in the custody and control of armored car couriers by means of actual and threatened force, violence, and fear of injury, in violation of 18 U.S.C. § 1951; in Counts Four, Six, Eight, Ten, Twelve, and Fourteen with unlawfully interfering with interstate commerce by robbery, in violation of § 1951; in Counts Five, Seven, Nine, Eleven, and Fifteen with possession and use of a firearm during the commission of the charged violent crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and in Count Thirteen with possession and use of a firearm, which caused the death of a person, during the commission of a violent crime, in violation of §§ 924(c)(1)(A) and 924(j)(1). [Doc. 312]. Represented by Jeffrey Lyn Ertel ("Ertel") and Stephen Patrick Johnson ("Johnson") of the Federal Public Defender Program, Inc., Henderson entered a negotiated guilty plea to Counts Four, Six, and Eight through Thirteen. [Docs. 627-1, 699]. The government agreed to dismiss the remaining counts, and both parties agreed to recommend a sentence of seventy-five years of imprisonment. [Id. at 6, 8].

The plea agreement includes a limited waiver of appeal, which states that Henderson

> voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions

2

filed pursuant to 28 U.S.C. § 2255) on any ground, except that [Henderson] may file a direct appeal of an upward departure or a variance from the sentencing guideline range as calculated by the district court.

[Id. at 10]. This provision of the plea agreement further provides that Henderson may file a cross appeal if the government appeals the sentence. [Id.]. Henderson signed the plea agreement and a separate certification section, which states in relevant part:

> I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.

[Id. at 11-12].

At the plea hearing, Henderson was placed under oath and confirmed that he had signed the plea agreement. [Doc. 699 at 2-3]. The Court explained to Henderson the rights he was giving up by pleading guilty, and Henderson stated that he understood. [Id. at 4-7]. The government then outlined the terms of the plea agreement, including the limited appeal waiver and the parties' agreement to recommend a sentence of seventy-five years of imprisonment. [Id. at 7-8]. Henderson agreed with the government's description and confirmed that no one had threatened or forced him to plead guilty or told him that if he did not plead guilty further charges

3

would be brought against him or other adverse action would be taken against him. [Id. at 8-9]. Henderson also acknowledged that no one had promised him anything not contained in the plea agreement or guaranteed a particular sentence. [Id. at 9]. Henderson further affirmed that he had sufficient time to discuss this matter fully with his attorneys and was satisfied with counsel's representation. [Id. at 10-11].

Next, the government stated the elements of the robbery offenses charged in Counts Four, Six, Eight, Ten, and Twelve as follows:

> [Henderson] knowingly acquired someone else's personal property. [Henderson] took the property against the victim's will by using actual or threatened force or violence or causing the victim to fear harm either immediately or in the future. And [Henderson's] actions obstructed, delayed or affected interstate commerce.

[Id. at 11]. Henderson understood that he was charged in those counts with "robbing an armored truck" and that he faced a possible total maximum sentence of one hundred years of imprisonment as to those counts. [Id. at 12-13]. The government then explained the elements of the firearms offenses charged in Counts Nine, Eleven, and Thirteen, stating:

> [Henderson] committed the crimes of violence charged in Counts 8, 10 and 12 of the indictment. Second, [Henderson] knowingly used a firearm. And, third, [Henderson] used the firearm in relation to a violent crime, that is, the crimes alleged in Counts 8, 10 and 12.

4

[Id. at 13]. Henderson understood that he was charged in those counts with "us[ing] a gun to commit a felony" and that he faced a maximum term of life imprisonment as to each of those counts and a total consecutive mandatory minimum sentence of fifty-seven years. [Id. at 14-17].

The Court explained that it would take into account the United States Sentencing Guidelines, which could not be determined until after a presentence report was completed and both parties had an opportunity to challenge the facts contained therein, and that it could impose a sentence above or below the guideline range. [Id. at 18]. The Court then reviewed the terms of the appeal waiver, and Henderson agreed that he understood the effect of the appeal waiver and that he was freely and voluntarily giving up his right to appeal. [Id. at 18]. Henderson also affirmed his understanding that he could not withdraw his plea should his sentence be more severe than he expected or the Court did not accept the sentencing recommendations contained in the plea agreement. [Id. at 19-20]. The government then summarized what the evidence would show if the case went to trial, including that Henderson was the armed gunman during the robberies, and Henderson agreed with the government's summary and admitted that he was guilty as charged in Counts Four, Six, and Eight

5

through Thirteen. [Id. at 20-28]. The Court accepted Henderson's plea. [Id. at 28-29].

At the sentencing hearing, the Court determined that Henderson's guideline range was 872 to 919 months of imprisonment. [Doc. 700 at 8]. The Court then imposed the agreed upon total sentence of 75 years, or 900 months, of imprisonment. [Id. at 12]. The Court entered its judgment on May 9, 2014. [Doc. 668].

Henderson timely filed a pro se notice of appeal on May 19, 2014. [Doc. 672]. However, Johnson, Henderson's attorney, subsequently filed a motion to voluntarily dismiss the appeal, stating that "Henderson does not wish to appeal the sentence imposed upon him by the Honorable Thomas W. Thrash, Jr. on May 09, 2014." [Doc. 734-1 at 5]. The United States Court of Appeals for the Eleventh Circuit granted the motion on December 10, 2014. [Doc. 719].

Henderson timely filed this pro se § 2255 motion, arguing that he received ineffective assistance of counsel when counsel failed to (1) ensure that Henderson understood the knowledge requirement for aiding and abetting a violation of § 924(c) and (2) pursue a direct appeal. [Doc. 728 at 4-5]. The government responds that Henderson's grounds for relief lack merit. [Doc. 734 at 13-20]. Henderson replies,

6

reasserting the merits of his grounds for relief.[1]  [Doc. 738].  The undersigned appointed counsel to represent Henderson, [Doc. 740], and conducted an evidentiary hearing to address ground two only, [Doc. 803].

## II.  DISCUSSION

### A.  Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The analysis is two-pronged.  However, a court need not address both prongs "if the defendant makes an insufficient

---

[1] To the extent that Henderson presents new grounds for relief in his reply, the Court declines to consider them because he has not sought leave to amend his § 2255 motion.

showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .") (citation omitted). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**B.     Ground One: Counsel's Assistance with Plea**

In ground one, Henderson argues that he received ineffective assistance of counsel when counsel failed to ensure that Henderson understood the knowledge requirement for aiding and abetting a violation of § 924(c). [Doc. 728 at 4]. To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Henderson has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

9

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Henderson's challenge to his guilty plea based on counsel's alleged failure to ensure that he understood the elements of aiding and abetting a § 924(c) violation is meritless. "[T]he aiding and abetting theory is not an essential element of the underlying offense[,] . . . [but] is merely a theory upon which criminal liability may be based." United States v. Camacho, 233 F.3d 1308, 1315 (11th Cir. 2000) (alteration and citation omitted). Additionally, the indictment charged Henderson with actually committing the § 924(c) offenses, as well as aiding and abetting his co-defendants with those offenses. [Doc. 312 at 7-11]. Henderson agreed with the government's description of what the evidence would show if the case went to trial, including that he was the armed gunman during the robberies, [Doc. 699 at 20-27], and thus, the Court adequately advised him about the nature of the § 924(c) offenses, [id. at 13-14]. Henderson confirmed his understanding of the nature of these offenses, stating "I used a gun to commit a felony." [Id. at 14]. Moreover, Henderson admitted under oath that he committed the crimes as charged. [Id. at 27-28]. Accordingly, Henderson is not entitled to relief on ground one.

**C.     Ground Two: Counsel's Failure to Pursue Appeal**

In ground two, Henderson alleges that counsel was ineffective for "failing to file [a] direct appeal" and for filing an "insufficient and improper" Anders[2] brief. [Doc. 728 at 5]. The government responds that counsel "voluntarily withdrew the appeal at Henderson's request." [Doc. 734 at 19]. Henderson denies that he asked counsel to dismiss the appeal and asserts that "he asked his counsel at sentencing to file a notice of appeal" and that counsel did not consult with him before moving to dismiss the appeal. [Doc. 738 at 6].

In its post-hearing brief, the government argues that Henderson has failed to meet his burden to show that Johnson provided him ineffective assistance by withdrawing the appeal at Henderson's request. [Doc. 804 at 7-10]. Henderson responds that he did not wish to withdraw the appeal, as evidenced by Johnson's testimony indicating that counsel had difficulties "in making sure that Mr. Henderson both understood and acquiesced in deciding to withdraw the appeal." [Doc. 815 at 1-2].

---

[2] Anders v. California, 386 U.S. 738 (1967).

1. **Summary of Relevant Evidentiary Hearing Testimony**

Johnson testified at the evidentiary hearing that he and Ertel negotiated the terms of Henderson's plea agreement and communicated those terms to Henderson. [Doc. 803 at 4-5]. According to Johnson, although Henderson was initially uncertain whether to accept the plea agreement, he eventually "realized it was in his best interest . . . to accept the plea offer." [Id. at 5-6]. Henderson entered a negotiated plea, which included a waiver of his right to appeal his conviction and sentence and to collaterally attack his conviction and sentence in any post-conviction proceeding, and he received a seventy-five year sentence consistent with the terms of his agreement. [Id. at 6-7]. While there were limited exceptions to the appeal waiver, Henderson's pro se notice of appeal did not fit within one of those exceptions. [Id. at 8]. Thus, Johnson became concerned when he discovered Henderson's notice of appeal. [Id. at 7-8]. Johnson was further concerned that the notice of appeal constituted a breach of the plea agreement and could expose Henderson "to much, much more harsh criminal penalties than he already faced." [Id. at 8].

When he learned of the appeal, Johnson scheduled a teleconference with Henderson to express his concerns about the appeal and share his thoughts on what action Henderson should take. [Id. at 9]. During the conversation, Johnson told

Henderson that the appeal would constitute a breach of the plea agreement and could expose Henderson to "greater criminal charges" and "a greater sentence." [Id. at 13]. Johnson specifically advised Henderson that the appeal could result in Henderson facing life imprisonment or even the death penalty. [Id. at 13-14]. Johnson reminded Henderson that, in addition to the crimes to which he had pleaded guilty, his alleged crimes also included an allegation in DeKalb County that Henderson had murdered the owner of Pin-Ups Strip Clubs. [Id. at 14]. Johnson emphasized that they had "worked extremely hard for years to convince the federal government not to pursue the death penalty . . . and that this appeal would undo all that work." [Id. at 14-15]. Johnson advised Henderson that the "right vehicle" for Henderson to pursue would be to file a habeas action claiming ineffective assistance of counsel. [Id. at 13].

During this conversation, Henderson gave Johnson no indication that he did not understand what Johnson had explained to him. [Id. at 15]. Henderson further did not state why he initially wanted to appeal. [Id.]. At the conclusion of the conversation, Henderson asked Johnson to withdraw the appeal, to send him a habeas form, and to update his mother about his case. [Id.].

Johnson subsequently sent Henderson a copy of the motion to voluntarily dismiss the appeal and a habeas form. [Id. at 19]. Neither Henderson nor anyone

13

acting on his behalf ever contacted Johnson stating that Henderson wanted to proceed with his appeal. [Id. at 20].

On cross-examination, Johnson testified that it was not easy to get Henderson to agree to the plea agreement and that there were many times that he did not want to go forward with the plea. [Id. at 22-23]. However, once Henderson entered his guilty plea, he never indicated a desire to withdraw it. [Id. at 23]. Although counsel did not want Henderson to appeal, Johnson agreed that ultimately it was Henderson's decision. [Id. at 24]. Johnson acknowledged that it was sometimes difficult to communicate with Henderson, who sometimes does not understand everything. [Id. at 25-26]. Johnson did not send Henderson a document to acknowledge his desire to withdraw the appeal, which, he conceded, would have been the better practice, although not required in this district. [Id. at 26-27].

### 2. Analysis

It is Henderson's burden to show that his counsel's performance was unreasonable, Chandler, 218 F.3d at 1312-13, but he did not testify at the evidentiary hearing or offer any evidence in support of his claim. The Court disagrees with Henderson's characterization of Johnson's cross-examination as showing that Henderson did not wish to withdraw the appeal. Johnson was adamant that Henderson

never indicated a desire to withdraw his guilty plea and ultimately agreed with Johnson's advise to forego an appeal. [Doc. 803 at 15, 20, 23, 25]. "[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Similarly, where a defendant instructs his attorney to withdraw his appeal, he cannot then complain that his counsel performed deficiently by following those instructions. See Krecht v. United States, 846 F. Supp. 2d 1268, 1291-92 (S.D. Fla. 2012) (finding counsel's performance "professionally reasonable and therefore not ineffective" where counsel followed defendant's instructions to withdraw his appeal). Based on the evidence presented, the Court finds that Henderson instructed Johnson to withdraw the appeal. Because Henderson has not met his burden to show that counsel's compliance with his express instructions amounted to unreasonable performance, he is not entitled to relief on ground two. Id.; see also Jones v. Estelle, 584 F.2d 687, 691 (5th Cir. 1978) (finding that counsel provided effective assistance when he advised defendant to withdraw appeal that was both meritless and against defendant's best interest).³

---

³ Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/82)

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Henderson's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

AO 72A
(Rev.8/82)

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 728], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED** this 6th day of JULY, 2017.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)